August 10, 1992

CLERK OF COURT
SUPREME COURT. CNMI
FILED

92 AUG 10 P3: 30

BY:

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

ANTONIO DLG. SANTOS, ) APPEAL NO. 91-017
 ) CIVIL ACTION NO. 90-357
 Plaintiff/Appellant, )
 )
 vs. ) OPINION
 )
FRANCISCO B. MATSUNAGA, )
 )
 Defendant/Appellee. )
_____)

Argued and Submitted May 28, 1992

Counsel for Plaintiff/Appellant: Juan T. Lizama
 P.O. Box 1508
 Saipan, MP 96950

Counsel for Defendant/Appellee: Douglas F. Cushnie
 P.O. Box 949
 Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

DELA CRUZ, Chief Justice:

The Superior Court entered judgment concluding that a certain deed of gift executed by plaintiff, Antonio DLG. Santos ("Santos"), was not fraudulently procured by defendant, Francisco B. Matsunaga ("Matsunaga"). Santos challenges several trial court rulings which precluded his counsel from asking certain questions intended to impeach a witness. He also contends that the trial court should

222

have entered judgment in his favor since the evidence shows that there was no valuable consideration given for the deed. Based on our analysis below, we affirm the trial court judgment.

## I.

### Procedural and Factual Background

Santos sued Matsunaga to have a deed of gift, executed in favor of Matsunaga on February 2, 1989, declared void because it was procured by fraud. He alleged that Matsunaga fraudulently induced him to convey Lot 1753-12 as a gift, based on Matsunaga's promise that he would sell the property and transfer the proceeds to Santos, i.e. the sum of $100,000, with the first $50,000 payable "within two weeks."

Paragraph 4 of the complaint had read: "4. Defendant represented and promised that he has found a buyer to purchase Lot 1753-12 for $100,000.00 and that within two weeks Defendant would give $50,000 to Plaintiff." Just before trial began, the clause "that he has found a buyer" was deleted from paragraph 4 of the complaint on plaintiff's motion. The remaining allegation of that paragraph was to the effect that Matsunaga represented and promised to purchase Lot 1753-12 for $100,000.00.

Santos also alleged that, at the time Matsunaga procured the deed of gift, Matsunaga had fraudulently intended not to fulfill what he represented and promised to do, i.e. pay Santos the sum of $100,000.

The case proceeded to trial. The court found that there was

223

no proof: (1) that Matsunaga told Santos that he would "effectuate a sale of Lot 1753-12"; (2) that Matsunaga told Santos that he would pay Santos $50,000 in two week's time; and (3) that Santos lacked sophistication in land matters.

Absent such proof, the trial court determined that the only issue remaining was whether Santos had proven that Matsunaga fraudulently promised to pay Santos $100,000 for the land in order to obtain the deed.

In addressing the conflicting testimonies as to this issue, the trial court stated:

> The defendant and the notary public who was present at the signing [of the deed of gift] have testified that no such promise was made and that the contents and effect of the deed of gift were thoroughly explained to the plaintiff in English and Chamorro before the plaintiff signed the deed. The plaintiff did not rebut the testimony about the extensive explanation of the meaning of the deed and indeed at argument plaintiff's counsel conceded that the plaintiff knew what he was signing.

Memorandum Decision, at 2.

The trial court noted that Santos has the burden of proving the elements of fraud. "Here, it is incumbent upon the plaintiff to satisfactorily prove that the defendant induced the plaintiff to sign the deed of gift by promising the plaintiff that the defendant would pay plaintiff $100,000 sometime in the future." Memorandum Decision, at 3.

Finding that plaintiff failed to prove by a preponderance of the evidence that the deed of gift was fraudulently procured, the Court entered judgment in favor of defendant Matsunaga.

## II.

### Issues and Standard of Review

Santos raises two issues on appeal. The first is whether the trial court erred by not allowing plaintiff's counsel to examine plaintiff and his wife and to cross-examine defense witness Pedro Nakatsakasa as to prior inconsistent statements allegedly made by Nakatsakasa. The second issue is whether the deed of gift is void for lack of consideration.

The first issue involves an evidentiary ruling which we review for abuse of discretion. Commonwealth v. Oden, No. 90-060 (N.M.I. July 6, 1992). The second issue involves a question of law which we shall review de novo. Commonwealth v. Tinian Casino Gaming Control Commission, No. 91-025 (N.M.I. May 12, 1992).

## III.

### ANALYSIS

### A. The Evidentiary Rulings

In analyzing the evidentiary issue raised by Santos, we review the three contexts within which the issue assertedly arose. The first context occurred when the plaintiff was testifying on direct examination and the following exchange took place:

> MR. LIZAMA: Mr. Santos, after the signing of the deed, did you ever, did you ever -- were you ever visited by Mr. Nakatsakasa at your house?
>
> A Yes, sir.
>
> Q How many times were you ever visited by Mr. Nakatsakasa?

A Plenty times, sir.

Q Do you recall any particular time that Mr. Nakatsakasa visited your house?

A Oh, sometimes in the morning, and in the evening.

MR. CUSHNIE: Objection, Your Honor. this seems to be beyond the scope of the pleading. I don't know what this has to do with this case.

COURT: How is this relevant, counsel?

MR. LIZAMA: I think it's relevant, Your Honor, because Mr. Nakatsakasa is a witness to the transaction, and Mr. Nakatsakasa -- we want to show, Your Honor, Mr. Nakatsakasa made a follow up as to this transaction.

MR. CUSHNIE: Mr. Nakatsakasa has not been plead in this thing, he has nothing to do with this transaction.

COURT: Your allegation, as I understand it, is that Mr. Matsunaga is the one who is buying the property, not Mr. Nakatsakasa.

MR. LIZAMA: Right. Okay, Your Honor. I think I understand the court's concern. I would withdraw that question and I'll wait until the witness comes on.

Trial Transcript, at 26-27.

The next context in which the issue arose was when plaintiff's counsel was examining plaintiff's wife.

MR. LIZAMA: Strike that. When was the most recent time that Mr. Matsunaga came to your house?

A That's 1989, always 1989, the one that's -- January, February, March, at that time always come to the house.

Q Do you know if Mr. Nakatsakasa ever came to your house after January, February?

A Yes.

MR. CUSHNIE: Objection, Your Honor, what's the relevancy of Mr. Nakatsakasa coming to the house.

226

COURT: Irrelevant.

MR. LIZAMA: No further questions, Your Honor.

Trial Transcript, at 40.

The last context in which the issue arose was when defense witness Pedro Nakatsakasa was being cross-examined by plaintiff's counsel.

MR. LIZAMA: After the signing of the deed, did you ever go there by yourself?

A Like I said, I always go there, because they've got a store, too.

Q Could you tell us, please, how many times did you go there after the signing of the deed?

MR. CUSHNIE: Objection, Your Honor, what happened after the signing of the deed is no consequence.

COURT: How's this relevant, counsel?

Trial Transcript, at 51.

MR. LIZAMA: I could rephrase the question, Your Honor, to bring that out. And I think if that's what the Court wants me to do --

COURT: Well, I'm going to sustain the objection. If you're talking about how many times he went to Mr. Santos' house after the Deed of Gift, I just don't find that relevant at all. Now, if you want to ask him about conversations before February 2nd as to, whatever he heard about $100,000 or whatever, or if he heard Mr. Matsunaga say something about $100,000, probably even after, I don't know, we may see whether Mr. Cushnie objects to that or not but those are -- that's appropriative [sic] but the current question is not. Sustained.

Trial Transcript, at 53.

██ As to the first context, i.e. the direct examination of the plaintiff himself, we agree with defendant Matsunaga that plaintiff's counsel clearly withdrew the question objected to.

227

That being the case, we decline to address the issue based on this context. See, e.g. In Re Estate of Dela Cruz. But even if the question had not been withdrawn, we fail to see how a prospective witness, Nakatsakasa, who has yet to testify, could be impeached, there being no prior inconsistent statement. United States v. Colombo, 869 F.2d 149, 153 (2nd Cir. 1989)(It is "axiomatic" that there must be "testimony in the trial at hand with which the proper statement is inconsistent before the latter may be introduced.") See Rule 613, Com.R.Evid.

As to the second context, i.e. the direct examination of plaintiff's wife, we also agree with Matsunaga that the question of whether the witness Nakatsakasa ever came to plaintiff's house after January and February of 1989 was clearly irrelevant because that would be after the deed had already been executed. Further, Nakatsakasa was not a party to the transaction. The issue of fraudulent procurement of the deed of gift concerns Matsunaga, not Nakatsakasa. But, again, if the line of questioning was meant to impeach Nakatsakasa, he had not yet testified and there was nothing to impeach. U.S. v. Colombo, supra.

As to the final context in which the issue arose, i.e. the plaintiff's cross-examination of defense witness Nakatsakasa, we agree with the trial court that the question as to how many times defense witness Nakatsakasa went to the plaintiff's house after the deed was signed was irrelevant for purposes of proving fraud. The issue at trial was fraudulent procurement of the deed by Matsunaga, not Nakatsakasa's actions or conduct after the event. The trial

228

proceedings reveal that the trial court ruling did not preclude plaintiff from inquiring as to conversations had up to February 2nd regarding any promise made by Matsunaga to pay $100,000 to the plaintiff.

Santos contends on appeal that the trial court abused its discretion in not allowing him to cross-examine the witness Nakatsakasa regarding what happened after the deed of gift had been executed. He argues that under Rule 613(b), Com.R.Evid., he should have been permitted to ask those questions, if any, to impeach such witness.[1] We disagree.

The trial court sustained the objection because the question had no relevance in proving the fraudulent procurement of the deed of gift by Matsunaga, i.e. that he fraudulently promised Santos before Santos executed the deed that he would pay Santos $100,000 when in fact he never meant to pay. We fail to see how Rule 613(b) is implicated. Rule 613(b) concerns the impeachment of a witness, and although plaintiff contends on appeal that he was trying to do so in his cross-examination of Nakatsakasa, the question was not phrased in a form to impeach. How many times Nakatsakasa went to Santos's store after the deed was signed was not, under the context

---

[1] Rule 613, Com.R.Evid., reads:

(a) Examining witness concerning prior statement. In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.

(b) Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in rule 801(d)(2).

in which the question was asked, designed to impeach. It certainly was irrelevant; and it is not clear, at the point the question was asked, what the prior inconsistent statement of Nakatsakasa was.[2]

We, therefore, hold that the trial court evidentiary rulings which Santos challenges do not constitute an abuse of discretion by the trial court. The objections were properly sustained for lack of relevancy. Further, they were either not questions designed to impeach a witness based on a prior inconsistent statement made by that witness, or were questions that were premature for purposes of impeachment at the time they were asked.

## B. The Failure of Consideration

The second issue raised by Santos is that the deed of gift should be declared void for lack of consideration. He acknowledges that a deed of gift executed in favor of one who is related to the grantor by blood or marital affinity is valid if the recited consideration is love and affection. But he then asserts:

> But a deed of gift to one who is not related by blood or marital affinity cannot stand on the simple consideration of love and affection.

Citing Florida Nat'l. Bank & Trust Co. v. Harris, 366 So.2nd 491 (Fla.App. 1979), as support.

---

[2] We note that the trial court hinted to Santos's counsel that were he to inquire as to what Nakatsukasa had heard after February 2nd, the date the deed was executed, regarding what Matsunaga said about paying the $100,000 to Santos, that would have been an appropriate question to ask. But the question asked of Nakatsukasa -- how many times did he go to Santos's store after the deed was signed -- did not go far enough. The objection was thus properly sustained. At any rate, we also note that after the objection was sustained, Santos's counsel did rephrase his question and asked Nakatsukasa regarding what was discussed "after the sale." Transcript, at 54, lines 10-21. Nakatsukasa denied that there was any discussion had after the sale.

230

Santos contends that it is clear from the evidence shown at trial that Matsunaga did not give any consideration of value and that Matsunaga is not related to Santos by blood or affinity. Therefore, Santos concludes that the recited consideration of love and affection is not valid and the deed should be declared void.

In addressing the issue of lack of consideration, we note that the only cause of action alleged by plaintiff was fraudulent procurement of a deed. The complaint did not state an alternative cause of action based on lack of consideration. This new theory was not raised at trial and, consequently, was not addressed by the trial court in deciding the case. Because the issue was not addressed below, we need to determine whether it is proper for us to consider the issue of lack of consideration which is being raised for the first time on appeal.

In Ada v. Sablan, No. 90-006, 1 N.Mar.I. 164 (N.M.I. Nov. 16, 1990), we decided that if an issue was not raised at trial, we may consider it for the first time on appeal only if (1) the issue is one of law not relying on any factual record, (2) a new theory or issue has arisen because of a change in the law while the appeal was pending, or (3) plain error occurred and an injustice might otherwise result if the appellate court does not consider the issue. We are not convinced that any of the three exceptions apply.

We are not satisfied, after reviewing the record, that plain error has occurred. Further, no new theory or issue has arisen because of a change in the law while the appeal was pending.

231

Finally, the issue of whether the deed was void for lack of consideration is not entirely an issue of law not relying on any factual record. It is one which rests on the factual record. Although the lack of consideration appear to be undisputed factually, we believe that the trial court must specifically find that (1) there was indeed no consideration provided by Matsunaga and (2) that Matsunaga in fact is not related by blood or affinity to Santos. That was not done because there was no cause of action alleged by Santos based on the theory of lack of consideration. Since that was not alleged, there was no reason for the trial court to consider it. Neither will we do so. <u>Singleton v. Wulff</u>, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); <u>Sea Lion Corp. v. Air Logistics of Alaska</u>, 787 P.2d 109, 115 (Alaska 1990).

Accordingly, the judgment of the trial court is hereby **AFFIRMED**.

Dated this 10th day of August, 1992, at Saipan, Northern Mariana Islands.

JOSE S. DELA CRUZ, Chief Justice

RAMON G. VILLAGOMEZ, Associate Justice

JESUS C. BORJA, Associate Justice